IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LEROY TOWNSEND,**

    **Plaintiff,**

v.                                                         **Civil Action No. 1:16cv38**
                                                            **(Judge Keeley)**

**JOSE RIVERA, Unit Manager, and**
**LT. JOHN SQUIRES, SIS Officer,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On March 14, 2016, Leroy Townsend ("Plaintiff"), an inmate incarcerated at FCI Hazelton in Bruceton Mills, West Virginia, initiated this *pro se* civil rights action by filing a Bivens[1] complaint[2] against the above-named defendants. ECF No. 1. Along with his complaint, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") and supporting documents. ECF Nos. 2, 3, & 4. The Clerk of Court issued a Notice of Deficient Pleading, directing Plaintiff to provide complete names and addresses for the Defendants. ECF No. 6. On March 24, 2016, Plaintiff filed a letter response to the deficiency notice. ECF No. 8. By Order entered April 18, 2016, the Clerk of Court was directed to correct the names of the Defendants on the docket. ECF No. 9. On April 25, 2016, Plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee ("IPFF"). ECF No. 11.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Plaintiff inadvertently filed his complaint on a court-approved form complaint for a state civil rights action pursuant to 42 U.S.C. § 1983. Nonetheless, because he is raising claims against federal actors, his claims are Bivens claims and thus, his complaint has been so construed.

On May 9, 2016, Plaintiff paid his IPFF. ECF No. 13. On July 14, 2016, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the complaint. Accordingly, an order to answer was entered. ECF No. 15. The Defendants moved for an extension of time and consolidated response date on August 31, 2016. ECF No. 22. By order entered September 2, 2016, Defendants' motion was granted. ECF No. 23. Defendants moved for another extension of time on October 17, 2016. ECF No. 28. By Order entered October 20, 2016, the Defendants' second motion for an extension was granted. ECF No. 29. On November 14, 2016, Defendants moved again for an extension of time [ECF No. 33]; by Order entered the following day, Defendants' third motion for an extension was granted. On November 23, 2016, Plaintiff filed a combined objection to the Defendants' third motion for an extension and a motion for default. ECF No. 36. On December 6, 2016, Defendants moved for an extension of time in which to respond to Plaintiff's motion for default [ECF No. 37]; by Order entered December 8, 2016, Defendant's motion was granted. ECF No. 38. On December 14, 2016, Defendants moved for another extension of time in which to respond to Plaintiff's complaint and motion for default. ECF No. 39. By Order entered December 20, 2016, Plaintiff's fifth and in the absence of extraordinary circumstances, last motion for extension to respond to Plaintiff's complaint and motion for default judgment was granted. ECF No. 41.

On January 13, 2017, Defendants filed a motion to substitute defendant and clarify the electronic docket. ECF No. 43. On January 23, 2017, Defendants filed a motion to dismiss with a memorandum in support. ECF Nos. 44 & 45. By Order entered January 24, 2017, Defendants' motion to substitute defendant and clarify the electronic docket was granted. ECF No. 47. Plaintiff filed a motion to appoint counsel on February 1, 2017. ECF No. 49. A <u>Roseboro</u> Notice was

entered on February 1, 2017. ECF No. 50. On February 16, 2017, Plaintiff filed a response in opposition to the Defendants' dispositive motion. ECF No. 52. By Order entered March 1, 2017, Plaintiff's motion for appointed counsel was denied. ECF No. 53.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendants' dispositive motion.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, Townsend raises an identity theft claim, contending that Defendant Rivera, his Unit Manager, violated his right to privacy by disclosing his personal identifying information to another inmate during the course of a class Townsend took while incarcerated at FCI Hazelton. Plaintiff claims this incident caused his credit to be "tampered with." ECF No. 1-3 at 2. Specifically, Plaintiff alleges that while taking a course called "Managing Credit," his identity was "stolen and fraudulently used." ECF No. 1-2 at 1; see also ECF No. 1-3 at 1. Attached to his complaint, Plaintiff provides a copy of a January 30, 2016 letter he wrote to the United States Department of Justice ("DOJ"), stating in pertinent part that

> [t]he inmate running the course had the Unit Manager prepare a document with the BOP seal; the Unit Manager's Name, his signature and my personal DOB, Social Security Number and FBI Number. These documents were then handed out by said inmate in class. Meaning he had unfettered access prior to passing them out.
>
> SIS here has taken my copy, without giving a receipt or confiscation Order pursuant to BOP Policy and protocol, in connection with me going to them for so called justice, after my unit team refused to permit me to contact the Local Police or U.S. Marshal to file a criminal complaint.
>
> I need to immediately file a criminal complaint with either WV STATE POLICE, FBI or U.S. MARSHALS. I also need the document that SIS here took from me, unredacted, just like it was when SIS took said document from me, so that I have as evidence for Identity Theft claim.

3

ECF No. 1-2 at 1. In the BP-8 included in the copies of grievances attached to his complaint, Plaintiff alleges that that in the class, "I declared I did not want a copy of my credit report. The inmate teacher[,] in direct opposition[,] with the help of Unit Man [sic] - Mr. Rivera gave said teacher[,] a convicted id theif [sic] my dob & soc sec # [sic]." ECF No. 1-5 at 5; see also ECF No. 1 at 9.

Further, Plaintiff alleges that the SIS Lieutenant, Defendant Squires,[3] "attempted to hinder my redress of grievance by taking said incarceration verification from me and still has not returned the BP-44 with all my personal info." ECF No. 1 at 8. He contends that after his initial meeting with Squires, Squires informed him that "he was having the class counseled." Id.

Plaintiff contends that his "true injury is the fact that the theft of my identity will affect my ability to get employmeny [sic], housing, or any type of consumer loan for years." Id. at 9.

Regarding whether he exhausted his administrative remedies regarding the claims in his complaint, Plaintiff contends he filed a BP-8 and BP-9, to which he received no responses, and a "BP-10 Regional Office Request Closed." Id. at 5. He attaches copies of his grievances. See ECF No. 1-3, 1-4, and 1-5.

As relief, Plaintiff requests monetary damages of "$75,000.000 per defendant to pay for credit monitoring and credit repair . . . [and] an additional $75,000.00 per defendant for emotional distress and violations of the Constitution." Id. at 9.

**B. Defendants' Motion to Dismiss**

Defendants argue that the complaint should be dismissed because:

1) Plaintiff lacks standing to pursue his claims [ECF No. 44 at 1];

2) Plaintiff has not pled a cognizable Privacy Act claim [id.; see also ECF No. 45 at 12]; and

---

[3] In the complaint, Plaintiff misspells Defendant Squires' surname as "Squills."

4

3) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 45 at 8.

4) The Defendants are both immune from Bivens liability. Id. at 19.

5) Plaintiff's claim for emotional distress is not cognizable because damages for emotional injury cannot survive without a physical injury. Id. at 20.

**C. Plaintiff's Response in Opposition**

Plaintiff reiterates his claims and arguments and attempts to refute the Defendants' argument regarding whether he had legal standing to pursue his claim. He does not address Defendants' other arguments. ECF No. 52.

### III. Standard of Review

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

### III. Analysis

**Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"3 and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

---

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005). Nonetheless, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's complaint implicitly admits that he did not fully exhaust his administrative grievances before filing suit, contending he filed a BP-8 and BP-9 and a "BP-10 Regional Office Request Closed [sic]." Id. at 5. In purported support, he attaches a copy of a January 28, 2016 BP-8, a February 3, 2016 BP-9 for Remedy #851017-F1, and a February 23, 2016 response from the Warden to Remedy #851017-F1 BP-9. All address his identity theft issues. The February 23, 2016 warden response states in pertinent part:

> You have filed a Request for Administrative remedy in which you allege you privacy has been violated because a staff member gave your personal information to an inmate teaching a Managing your Credit class. All allegations of staff misconduct are taken seriously. Your allegation has been referred to the appropriate department for further review. You will not be informed of the outcome of any staff investigation. **Your request for administrative relief is closed with an explanation. If dissatisfied with this response, you may appeal to the Regional Direction, BOP . . . within 20 calendar days of this response**.

ECF No. 1-4 at 2 (emphasis added).

The Defendants argue that Plaintiff filed two separate administrative remedies regarding staff misconduct with respect to his identify theft claims and failed to fully exhaust either. ECF

No. 45 at 10 – 11. Defendants attach a copy of the Declaration of Howard Williams, Legal Assistant and Administrative Remedy Clerk, Mid-Atlantic Regional Office of the BOP, attesting to the same. ECF No. 45-1, ¶ 26 at 7. Plaintiff's response in opposition makes no mention of the issue.

A careful review of the record supports Defendant's contentions. Plaintiff filed Remedy #851017-F1, which was received on February 8, 2016. It was closed at FCC Hazelton on February 23, 2016. ECF 45-1 at 44. Plaintiff did not appeal it. ECF No. 45-1, ¶ 23 – 24 at 6; see also id. at 44. On May 3, 2016, Plaintiff filed Remedy #861938-R1 marked as "sensitive" directly with the Mid-Atlantic Regional Office, alleging staff misconduct. Id., ¶ 25 at 6 – 7. An inmate is authorized to designate a grievance as sensitive if he reasonably believes that "the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution;" in such cases, the grievance may be submitted directly with the BOP Regional Director. 28 C.F.R. § 542.14(d)(1). The Regional Director will accept the grievance if "the Regional Administrative Remedy Coordinator agrees that the Request is sensitive." Id. Otherwise, the Regional Director will reject the grievance and if the inmate wants to pursue the matter, he must pursue file it as an institutional grievance with the Warden at his federal correctional facility. Id. Here, the Regional Director deemed Townsend's Remedy #861938-R1 as not sensitive and rejected it as one that should be properly filed with the Warden at his facility. ECF No. 45-1, ¶ 25 at 6 – 7. Townsend never appealed the rejection to the BOP's General Counsel or resubmitted his grievance to the Warden at FCC Hazelton as instructed. Id., ¶ 26 at 7; see also ECF No. 45-1 at 23. Accordingly, it is apparent that Townsend failed to fully exhaust the only two administrative remedies he ever filed over the issues in this complaint.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, Plaintiff has made no claim that the administrative grievance process was unavailable to him. In a copy of a January 28, 2016 email to the Warden attached to his complaint, Townsend implied that his counselor "Mr. Grithin," after initially being cooperative and providing him with a BP-8, Grithin refused to make a copy of it for him after he filled it out, and refused to give him the necessary tracking number to file it. Even if this allegation were true, given that the copy of Townsend's administrative grievance history provided by the Defendants shows that the grievance was in fact filed, it is apparent that Grithin must have ultimately cooperated. Accordingly, Grithin did not *prevent* him from exhausting his first administrative remedy, and Plaintiff makes no further allegation that Grithin or any other staff member ever prevented him from fully exhausting his first, or from filing and then fully exhausting his second administrative remedy. Nor does Plaintiff claim that any prison officials ever threatened him with violence to discourage him from filing grievances.

Accordingly, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and has not done so; therefore, the undersigned finds that his failure to exhaust cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now do so under the BOP's administrative remedy procedure;[5] therefore, his claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq.*

## V. Recommendation

---

[5] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

For the reasons stated above, the undersigned hereby recommends that Defendants' Motion to Dismiss [ECF No. 44] be **GRANTED** and Plaintiff's complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice.**

Further, the undersigned recommends that Plaintiff's motion for default judgment [ECF No. 36] be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to all counsel of record via electronic means.

DATED: May 4, 2017

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE